COHEN FURNITURE COMPANY, Plaintiff-Appellee and Cross-Appellant, v. ST. PAUL INSURANCE COMPANY OF ILLINOIS, Defendant-Appellant and Cross-Appellee.

Third District No. 3—90—0241

Opinion filed June 11, 1991.

Johnson & Bell, of Chicago (James S. Stickles, Jr., of counsel), for appellant.

James W. Springer, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria (David J. Dubicki, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

Defendant appeals the trial court's determination that the replacement cost insurance coverage in the policy issued by defendant required defendant to indemnify plaintiff for the cost of a fire suppression system which plaintiff incorporated into its reconstructed building.

Plaintiff filed a cross-appeal disputing the trial court's determination that defendant was justified in subtracting from the amount it paid to plaintiff, pursuant to business interruption insurance, tax depreciation of the building destroyed by fire, for the period between the fire and defendant's occupation of the replacement building.

We reverse the trial court's determination granting plaintiff's motion for partial summary judgment with respect to the fire suppression system. We deny plaintiff's cross-appeal and uphold the trial court's resolution granting defendant's motion for partial summary judgment with respect to the tax depreciation issue.

On March 17, 1987, an accidental fire destroyed a building which plaintiff operated as a furniture store. The original building, which was constructed in 1971, did not contain a fire suppression system.

In 1978, the Jacksonville, Illinois, building code (Code) was amended to require the installation of a fire suppression system in the construction of all new buildings similar to the destroyed building. Following the loss, plaintiff replaced the old store with a new building which, in accordance with the mandate of the Code, included a

$54,000 fire suppression system. The cost of the new building was less than the policy's limit on building coverage.

The defendant's policy was issued approximately 16 years after the construction of the original building and approximately eight years after the change in Code. Defendant agreed to, and did, pay plaintiff the cost of the new building, subject only to its refusal to pay for the fire suppression system. The parties disagree as to whether the terms of the insurance policy obligate the defendant to indemnify plaintiff for the cost of the fire suppression system.

Subsequent to the fire, defendant paid to plaintiff the sum due to replace the building but excluded the $54,000 amount plaintiff incurred for the installation of the fire suppression system. Pursuant to the plaintiff's business interruption insurance policy with defendant, defendant deducted $19,581 as a depreciation allowance. Defendant contends that the $19,581 depreciation allowance was a "noncontinuing" expense which was made unnecessary by the fire, and therefore, properly deducted under the business interruption policy provisions. Other expenses which defendant deducted as noncontinuing were: commissions, purchased labor—net, customer service, sales training, supplies/samples—net, miscellaneous selling expenses, advertising, store occupancy, delivery, office services, and general and administrative expenses. Plaintiff disputes in its cross-appeal the validity of defendant's deduction for tax depreciation in the amount of $19,581.

After submission of motions for partial summary judgment and oral argument on the issue of payment for the fire suppression system, the trial court entered judgment in favor of plaintiff in the amount of $54,000 plus interest. With respect to the issue of deduction of depreciation, the trial court granted defendant's motion for partial summary judgment and entered judgment in favor of defendant.

■ The present dispute concerns the construction of the parties' contract and principles of insurance law. In order to determine whether defendant was liable to pay plaintiff for the suppression system, the construction and intent of the provisions of replacement cost coverage must be examined. An insurance policy should be enforced as written if its provisions are clear and unambiguous. (*Severs v. Country Mutual Insurance Co.* (1982), 89 Ill. 2d 515, 434 N.E.2d 290.) Courts should not torture the language of a policy to find coverage where none clearly exists. *Murphy v. Peterson* (1984), 129 Ill. App. 3d 952, 473 N.E.2d 480.

The policy in the instant case contained the following provisions:

> **"How We'll Figure Your Loss**
>
> **Actual cash value coverage.** If indicated in the Coverage Summary, we'll consider the value of covered buildings to be the actual cash value of your interest in the building at the time of the loss. If a covered building is damaged or destroyed while coverage is in effect, we'll pay either the cost of repairing or replacing the building with similar kind and quality or the actual cash value at the time of loss, whichever is less. But the most we'll pay for any loss from any one event is the Limit of Coverage shown in the Coverage Summary.
>
> **Replacement Cost.** Unless otherwise indicated, we'll pay the cost of repairing or replacing damaged property without deduction for depreciation. But we won't pay more than the smallest of the following:
>
> 1. the limit of coverage that applies to the property;
>
> 2. the amount you actually spend in repairing or replacing the property with property of similar kind and quality; or
>
> 3. the amount it would cost to replace the damaged item at the time of the loss with property of similar kind and quality to be used for the same purpose on the same site."

The policy also contained the following provision under the heading, **"Property Exclusions—Losses We Won't Cover,"** which provided in pertinent part:

> **"Building laws.** We won't cover loss that is caused directly or indirectly by the enforcement of any law governing the use, construction, repair or demolition of buildings or other structures, including removal of debris. Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

The policy summary dated November 14, 1986, indicates that the plaintiff had replacement cost coverage under the policy.

On appeal, the defendant contends the trial court erred in finding that the policy covered the cost of the fire suppression system. Noting the building laws exclusion, the defendant argues that the additional cost of rebuilding the store with the required fire suppression system was the result of the enforcement of a local building ordinance; thus, this cost was excluded from coverage. The defendant also argues that the fire suppression system is not covered by replacement cost insurance.

When an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt. (*Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694, 474 N.E.2d

953.) In the instant case, the policy excluded losses "caused directly or indirectly by the enforcement of any law governing \*\*\*, construction, repair \*\*\* of buildings." The City of Jacksonville ordinance required the fire suppression system to be installed in the newly constructed building. This increased cost of rebuilding is a direct result of the enforcement of the ordinance and falls squarely within the terms of the building laws exclusion.

We find no merit to plaintiff's contention that under the defendant's interpretation of the provision no rebuilding costs would be recoverable because all costs are increased by laws and regulations. The record indicates that other than the cost of the fire suppression system, the defendant paid all other costs of reconstruction. Thus the defendant is not attempting to use the building laws exclusion to escape its obligations to cover replacement costs.

The plaintiff also argues that the building laws exclusion should be held unenforceable as against the public policy of this State. The plaintiff concedes that there is no Illinois case which directly addresses this issue. The cases cited by the parties in arguing this point are readily distinguishable on their facts or on the issue of law presented. For example, most of the cases relied on by the plaintiff (*e.g., Hertog v. Milwaukee Mutual Insurance Co.* (Minn. App. 1987), 415 N.W.2d 370; *Stahlberg v. Travelers Indemnity Co.* (Mo. App. 1978), 568 S.W.2d 79; *Unified School District No. 285 v. St. Paul Fire & Marine Insurance Co.* (1981), 6 Kan. App. 2d 244, 627 P.2d 1147) involve the enforceability of such exclusionary provisions in States which have valued policy statutes. Valued policy statutes require that in cases of total loss the insurer must pay the whole amount mentioned in the policy. (*Hertog v. Milwaukee Mutual Insurance Co.* (Minn. App. 1987), 415 N.W.2d 370.) Courts in these States have limited the reach of these exclusionary provisions when insurers attempt to use them to limit their liability, in cases of a total loss, to less than the face value of the policy.

In *Hewins v. London Assurance Corp.* (1903), 184 Mass. 177, 68 N.E. 62, the insureds suffered a partial loss due to fire. The issue presented was whether the referees, in determining the amount of damages to which the insureds were entitled, "had the right to take into consideration the increased cost of repairing the building by reason of the building laws." Twelve separate policies were involved. Eleven of the policies contained the following provision: "In case of any loss or damage, the company \*\*\* shall either pay the amount for which it shall be liable, which amount, if not agreed upon, shall be ascertained by award of referees, as hereinafter provided, or replace the property with other of the same kind and goodness, or it may \*\*\* notify the insured of its intention

to rebuild or repair the premises." It was agreed that the cost of fully indemnifying the insureds was greater if the building laws were considered. The court held, "While it is true that by reason of their existence [the building laws] the loss caused by the ravages of the fire was greater than it otherwise would have been, it is none the less true that the sole operating cause of the change in the building was the fire, and, as above stated, in the absence of any provision in the policy expressly excluding from the damages the part arising out of that condition, that part is not to be excluded, but is to be regarded as primarily the result of the fire, or as 'loss or damage by fire.' " (*Hewins v. London Assurance Corp.* (1903), 184 Mass. 177, 181-82, 68 N.E. 62, 64.) The insurers were therefore liable for the increased costs resulting from the building law requirements.

The twelfth policy provided that in the case of loss, the loss or damage "shall in no event exceed what it would cost the insured to repair or replace the same with material of like kind and quality." A second provision provided that the insurer would not be liable "beyond the actual value destroyed by fire for loss occasioned by ordinance or law regulating construction or repair of buildings, or by interruption of business, manufacturing processes or otherwise." The court found that when the two provisions were construed together, they modified "the general rule as to the measure of the loss by fire in such case as this, and that the fair construction of these two clauses taken together is that such portion of the damage caused by the change in the condition of the building as arises from the existence of the building laws, whether regarded as a condition or a cause, is not to be considered as a loss or damage by fire, but is to be excluded from consideration, and the loss is to be estimated as if there were no building laws affecting the situation." (*Hewins v. London Assurance Corp.* (1903), 184 Mass. 177, 182-83, 68 N.E. 62, 64.) Under this policy, because of the explicit exclusion found in the policy, the insurer was not liable for the costs attributable to the building law requirements.

Although the *Hewins* case is not completely on point, it is the most widely cited case upholding building laws exclusions in insurance policies, and we find it instructive. The plaintiff offers no reasoned explanation for why the building laws exclusion found in the defendant's policy should be found to contravene the laws or public policy of the State of Illinois. We can find no reason to so hold. As an aside we note that the record indicates that the defendant offers an endorsement which changes the basic policy to cover losses resulting from the enforcement of building laws.

We need not address the defendant's argument concerning the scope of replacement cost insurance, since in any event we would find coverage excluded by the building laws exclusion.

In sum, we find the expense attributable to the installation of the fire suppression system was excluded from coverage under the building laws exclusion contained in plaintiff's insurance policy. We find the exclusion is clear and unambiguous and does not contravene the public policy of this State. Therefore, the trial court erred in granting the plaintiff's motion for partial summary judgment on the issue of the fire suppression system.

The second dispute between the parties and the source of plaintiff's cross-appeal emanates from the business interruption section of the insurance policy. This section states, in relevant part:

> "*Loss of Earnings and Extra Expense*
>
> We'll cover your actual loss of earnings and extra expenses incurred because of necessary or potential interruption of business caused by covered direct damage to the building or business contents at an insured location.
>
> *Your Loss of Earnings*
>
> By earnings we mean your normal operating expenses including payroll, taxes, interest, rent and other such expenses. Earnings also include your net profit after you pay these operating expenses as well as any rent you receive on covered property. But we won't include any charges and expenses which become unnecessary during the halt in your business operations. In figuring earnings, we'll weigh the performance of your business before the loss and what its performance probably would have been afterwards had no loss occurred.
>
> *Your Extra Expenses*
>
> Extra expenses are any necessary operating expenses over and above what it would normally cost you to conduct your business had no damage occurred."

■ The purpose of business interruption insurance is to provide a recovery for loss of net profits and necessary earned expenses. Additionally, as with all insurance, insurance should comport with Illinois public policy indemnifying the insured for the loss, but not providing a windfall profit. (*Beman v. Springfield Fire & Marine Insurance Co.* (1940), 303 Ill. App. 554, 25 N.E.2d 60; *Patterson v. Durand Farmers Mutual Fire Insurance Co.* (1940), 303 Ill. App. 128, 24 N.E.2d 740.) A recovery should provide the insured with net profit, which he/she would have earned during the interruption, plus cash expenditures which were necessary so that he would be able to reopen after the interruption. (*Di-*

*Leo v. United States Fidelity & Guaranty Co.* (1969), 109 Ill. App. 2d 28, 248 N.E.2d 669.) To cover charges and expenses against profit, the insured must establish that they are "normal charges and expenses that are necessary to adequate resumption of the assured's operations." *Di-Leo*, 109 Ill. App. 2d at 41, 248 N.E.2d at 675-76.

The amount in dispute between the parties is $19,581. This amount represents a portion of the amount plaintiff deducted on its income tax return for depreciation of the destroyed building and its improvements. The deduction accrued from March 18, 1987, to October 31, 1987 (the period of time from the fire until plaintiff moved into its new building).

Plaintiff states that depreciation on the destroyed building should not have been deducted from the amount due plaintiff under the "loss of earnings and extra expense" provisions of the policy because depreciation is neither an expense nor an operating expense. Plaintiff argues, in essence, that the depreciation charged against income for the period of business interruption should become part of net profit as defined by the policy (*i.e.*, net profit is defined by the policy to be greater than net profit for income tax purposes, because for the purpose of this insurance, net profit would *include* the allocation for depreciation).

Plaintiff's argument is misplaced. The policy specifically excludes charges, as well as expenses, that become unnecessary. Even the Illinois Supreme Court considers an allocation for depreciation to be an "operating expense" (see *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 59, 25 N.E.2d 482, 496-97; *Downers Grove Community High School District No. 99 v. Board of Education of Non-high School District* (1946), 329 Ill. App. 208, 214, 67 N.E.2d 605, 608), as do other courts, *e.g., Daley v. W.H. Stotts* (W.D. Okla. 1954), 126 F. Supp. 555, wherein the court described depreciation as "an operating expense"; and authors, *e.g.*, R. Morrison, *Business Interruption Insurance, Its Theory and Practice*; and E.C. Bardwell, *New Profits, Business Interruption Insurance* (3d Ed. 1976).

In projecting loss of earnings under the business interruption policy, defendant subtracted from the earnings the "noncontinuing expenses," *i.e.*, expenses which were saved as a result of the fact the business was not in operation. These correspond to expenses which became unnecessary during the halt in plaintiff's business. Thus, the determinative issue is whether depreciation on a destroyed building is unnecessary and noncontinuing during the period of interruption.

■ A case most similar to the present dispute is *Fidelity-Phenix Fire Insurance Co. v. Benedict Coal Corp.* (4th Cir. 1933), 64 F.2d 347. There, the court was asked to determine whether depreciation on property which had been destroyed should be allowed as a fixed charge in

determining the insured's business interruption loss. The policy stated as follows:

> "[T]his company shall be liable under this policy for the actual loss sustained consisting of:

> 1. Net profits on the business which is thereby prevented; 2. Such fixed charges and expenses as must necessarily continue during a total or partial suspension of business, to the extent only that such fixed charges and expenses would have been earned had no fire occurred ***." *Fidelity,* 64 F.2d at 350.

In discussing the nature of this type of insurance, the court stated that its purpose was to

> "indemnify the assured against losses arising from the interruption of business by fire or other catastrophe insured against; and lost profits and fixed charges and expenses which continue and which would have been earned if the business had gone on are the losses naturally arising from such interruption." *Fidelity,* 64 F.2d at 352.

This type of loss is to be determined in a practical way without confinement to that with which the insured keeps his books for income tax purposes. (64 F.2d at 352.) Accordingly, the loss would consist of a loss of profits plus fixed charges and expenses which necessarily continue and which would have been earned if the business had not been interrupted. 64 F.2d at 352.

Pursuant to this analysis, the court concluded that depreciation on a destroyed building during the period of interruption was an unnecessary charge and therefore should not be an element of the loss. The court stated:

> "[D]epreciation on property which has been destroyed is not to be allowed as a fixed charge, even though it must be considered in estimating profits [*i.e.,* a reduction in profit] which would have been earned if the business had gone on; for manifestly property which has been destroyed cannot depreciate." 64 F.2d at 353.

In *American Insurance Co. v. Pickering Lumber Corp.* (N.D. Cal. 1949), 87 F. Supp. 512, the court held that a charge for depreciation on a destroyed building was unnecessary and should not be included as an amount of the loss. The policy provided that a loss consisted of:

> "Item I: The net profits on the business which is thereby prevented;

> Item II: Fixed charged and expenses only to the extent to which they would have been earned had no fire occurred, as follows: *** *depreciation* *** and such other fixed charges and ex-

penses which must necessarily continue during a total or partial suspension of business." (Emphasis in original.) *American*, 87 F. Supp. at 519.

The court sustained the referee's position because it recognized that the phrase "which must necessarily continue" substantially limited the class of charges and expenses "which would normally have been earned." *American*, 87 F. Supp. at 519.

Further support can be found in the case of *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.* (3d Cir. 1980), 632 F.2d 1068, wherein the court defined a "noncontinuing" or "unnecessary" expense. The court stated as follows:

> "Paragraph 10—b sets forth a formula precisely limiting the scope of recovery. The policy states that the business interruption loss shall not exceed 'the reduction in earnings less charges and expenses which do not necessarily continue during the interruption.' A close analysis of the terms of this formula demonstrates that it is subject to only one reasonable interpretation.
>
> \* \* \*
>
> The second element of the formula is the phrase 'charges and expenses which do not necessarily continue during the interruption.' This language refers to expenses that the insured business incurs during normal operations which, because of the work stoppage, it does not need to incur during the interruption, such as fuel to run machinery in the mine. Thus, the second element of the formula refers to expenses which could properly be discontinued during the interruption." *Eastern*, 632 F.2d at 1077.

The *Eastern* court agreed with the defendant's computation and respective position that depreciation was a "noncontinuing" expense which should be deducted from the first element of the formula: earnings (*i.e.*, total net sales value of production). 632 F.2d at 1078 n.16.

For further support of the contention that depreciation allowance on a destroyed building is a charge which becomes unnecessary during the business interruption, see: E.S. Wilson, *Business Interruption Coverage A Basic Primer Non-Allowable Expenses in Business Interruption Losses, American Bar Association Journal: Depreciation*:

> "The depreciation on the insured's buildings is based on obsolescence and the depreciation on the furniture, fixtures and equipment is based on wear and tear. The *depreciation charge* should not be allowed as a proper continuing expense on the furniture, fixtures and equipment during the period of interruption. It should be allowed on the building only if the damage to the building is very slight.

Undamaged property, such as automobiles, other real property and furniture, fixtures and equipment located in that real property, would continue to be a proper charge. However, that charge should only be allowed at a reduced rate since the use of that property would be reduced during the period of interruption." (Emphasis added.)

We believe the defendant properly deducted the depreciation charge because it was a charge which became unnecessary during the business interruption. Moreover, an allowance for the depreciation can only be deducted during the useful life of an asset. A taxpayer cannot depreciate a nonexistent asset. Therefore, it is clear that once an asset has been destroyed, an insured cannot charge a depreciation expense. See, e.g., *Fidelity-Phenix Fire Insurance Co. v. Benedict Coal Corp.* (4th Cir. 1933), 64 F.2d 347.

■■ ■ The policy at issue clearly and unambiguously provides that the actual loss under the loss of earnings coverage shall not "include any charges and expenses which become unnecessary during the halt in *** business operations." Accordingly, defendant was correct when it excluded the item of depreciation on the destroyed building in determining the actual loss recoverable under the policy. The depreciation which had been a charge could not continue after the fire and therefore became unnecessary. The trial court was correct in granting defendant's motion for partial summary judgment on the issue of deduction for depreciation.

In conclusion, we hold that the trial court erred by granting plaintiff's motion for partial summary judgment in the amount of $54,000 plus interest. We further hold that the trial court did not err by granting defendant's motion for partial summary judgment on the issue of deduction for depreciation. Accordingly, plaintiff's cross-appeal is denied.

Affirmed in part; reversed in part.

STOUDER, P.J., and BARRY, J., concur.