THEODORE GREVAS, Plaintiff-Appellee, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellant.

Third District   No. 3—91—0103

Opinion filed January 10, 1992.

Bozeman, Neighbour, Patton & Noe, of Moline (John P. Harris, of counsel), for appellant.

Eagle & Eagle, of Rock Island (Robert A. Eagle, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

Theodore Grevas, plaintiff-appellee, owned a rental apartment building insured by the defendant-appellant, United States Fidelity and Guaranty Company (USF&G). Grevas' building was destroyed by fire in April of 1989. Part of USF&G's insurance policy included business interruption coverage. The policy provided that Grevas was to receive his net profits from the rental building for one year. The amount was calculated by deducting Grevas' noncontinuing expenses, such as utilities and lawn maintenance, from the building's gross income. USF&G made a settlement offer to the plaintiff which included a $14,841 deduction for depreciation of the premises. USF&G claimed depreciation was an expense that was noncontinuing. Grevas claimed that depreciation was not an expense as contemplated by the parties' agreement. Grevas brought suit contesting the depreciation deduction. The trial court held that the contract was ambiguous as to whether depreciation was a noncontinuing expense. The court ruled that since the policy was drafted by the defendant, any ambiguity should be con-

strued against the defendant. The court entered judgment in favor of the plaintiff. The defendant appeals.

The policy provided for coverage for the physical destruction of the property as well as the interruption of business resulting from fire or other catastrophe. Expenses such as lawn maintenance and apartment cleaning, which were not necessary during the interruption of business, were not covered. These "noncontinuing" expenses were to be deducted from gross profits in arriving at the award due under the policy. The policy provided in part:

> "The actual business loss sustained shall not include charges and expenses which do not necessarily continue during the interruption of business or during the untenantability of the premises."

The issue before this court is whether depreciation is a "noncontinuing" expense which should be deducted from the amount of the business interruption loss claim prior to payment to a policy holder. We recently dealt with this issue in *Cohen Furniture Co. v. St. Paul Insurance Co.* (1991), 214 Ill. App. 3d 408, 573 N.E.2d 851. In *Cohen*, the plaintiff's rental building was destroyed by fire. In addition to coverage for the physical destruction of the property, the plaintiff was insured against the interruption of business resulting from fire or other catastrophe. After the fire, the insured chose to rebuild the plaintiff's building. From the time of the fire until the building was completely rebuilt, the plaintiff continued to deduct depreciation on the destroyed building for income tax purposes. In *Cohen*, as in the case at bar, the plaintiff argued that depreciation on the destroyed building should not have been deducted from the amount due plaintiff under the "Loss of Earnings and Extra Expense" provisions of the policy. Plaintiff further argued that depreciation is neither an expense nor an operating expense, and that net profit for the purpose of a business interruption insurance policy is different than net profit for income tax purposes.

In the instant case, plaintiff makes a similar argument and goes on to say that depreciation which is taken on a building is not really an operating expense but is a device which is used to deduct a portion of the capital expenditure which was made to erect the building in the first place from a person's net income for tax purposes. The argument continues that a business' net income is really higher than its net income for tax purposes. The deduction for depreciation reduces the net profit of a business for tax purposes but does not adversely affect the cash flow and real profit of the business. The argument further continues that if a business were to actually take the deprecia-

tion deduction and set it aside in reserve for construction of a replacement building upon obsolescence of the original building, that would adversely affect the current profitability of the business. However, rarely, if ever, does that occur in the real world and, therefore, depreciation is nothing more or less than a way to reduce taxes and has nothing to do with the operation of the business.

In *Cohen,* the plaintiff's argument was rejected. The court held, "Plaintiff's argument is misplaced. The policy specifically excludes charges, as well as expenses, that become unnecessary. Even the Illinois Supreme Court considers an allocation for depreciation to be an 'operating expense' (see *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 59, 25 N.E.2d 482, 496-97; \*\*\*)." *Cohen,* 214 Ill. App. 3d at 416.

The court, in *Cohen,* then proceeded to analyze a number of cases from other jurisdictions which have dealt with the issue of depreciation and business interruption insurance. The court likewise cited to certain insurance texts. After that analysis the court in *Cohen* held:

"We believe the defendant properly deducted the depreciation charge because it was a charge which became unnecessary during the business interruption. Moreover, an allowance for the depreciation can only be deducted during the useful life of an asset. A taxpayer cannot depreciate a nonexisting asset. Therefore, it is clear that once an asset has been destroyed, an insured cannot charge a depreciation expense. [Citation.]

The policy at issue clearly and unambiguously provides that the actual loss under the loss of earnings coverage shall not 'include any charges and expenses which become unnecessary during the halt in \*\*\* business operations.' Accordingly, defendant was correct when it excluded the item of depreciation on the destroyed building in determining the actual loss recoverable under the policy. The depreciation which had been a charge could not continue after the fire and therefore became unnecessary." 214 Ill. App. 3d at 419.

In the instant case, we are now called upon to reanalyze whether our position in *Cohen* was correct. The argument has been made here that the doctrine in *Cohen* leads to potential unfair results and unequal treatment for insurance claimants similarly situated. Plaintiff argues that under *Cohen* a policy holder who had completely depreciated his building for income tax purposes and was no longer able to claim depreciation on his Federal income tax return would receive more money in business interruption loss than a person who was still claiming depreciation even if both buildings were of equal value and condi-

tion. Plaintiff further argues that the real reason for business interruption insurance is to place the insured in the same position, *vis-a-vis* the operation of his business, as he would have been in had not the fire loss occurred. The argument continues that depreciation really is irrelevant when considering a person's actual profit and loss position on a given year's operation.

While plaintiff's arguments have a certain degree of logical merit and may in fact comport with business experience, we decline to reverse our decision in the *Cohen* case. To reverse *Cohen* and to follow the plaintiff's argument would require the court to engage in speculation about matters *dehors* the record dealing with the real purposes and intentions of the parties in claiming depreciation. Based on the record before us, we decline to do that. The language in the policy is clear and unambiguous. Where the language in the policy is clear and unambiguous, it is not necessary for the court to interpret the intent of the parties. Furthermore, when the language of an insurance contract is unambiguous and clear, the court shall enforce the policy. (*Allstate Insurance Co. v. Panzica* (1987), 162 Ill. App. 3d 589, 515 N.E.2d 1289.) It is clear from the record that depreciation was an expense that would have been deducted from net profits from rental operations had the building continued to remain intact. It is also clear from the record that once the building was destroyed, that expense was noncontinuing. Therefore, under the clear language of the policy, depreciation must be deducted from gross rents in order to arrive at the proper figure under the business interruption coverage of the policy.

In conclusion, we hold that the trial court erred in finding that the policy was ambiguous and that depreciation should not be deducted from the business interruption award. Accordingly, the judgment of the circuit court of Rock Island County is reversed.

Reversed.

GORMAN and SLATER, JJ., concur.