689 A.2d 798

DENISE DANZEISEN, PLAINTIFF–RESPONDENT/CROSS–AP-
PELLANT, v. SELECTIVE INSURANCE COMPANY OF AMER-
ICA, DEFENDANT–APPELLANT/CROSS-RESPONDENT, AND
SUYDAM INSURANCE AGENCY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 3, 1997—Decided March 7, 1997.

Before Judges BROCHIN and KESTIN.

*Thomas E. Maloney, Jr.*, argued the cause for appellant/cross-respondent (*Maloney and Katzman*, attorneys; *Mr. Maloney*, on the brief).

*Glenn A. Bergenfield* argued the cause for respondent/cross-appellant.

The opinion of the court was delivered by

KESTIN, J.A.D.

The trial court granted plaintiff's motion for summary judgment in this action on a commercial insurance policy issued by Selective Insurance Company of America (defendant) covering fire loss. The trial court concluded that plaintiff was entitled to compensation for a total loss on a replacement cost basis. Having determined that the cost of replacing the structure exceeded the $525,000 policy limit, the trial court, *inter alia*, entered an order for judgment in that amount, while denying plaintiff's application for pre-judgment interest. Both parties appeal, respectively, from these determinations.

The loss occurred on September 24, 1993, from a roof collapse as the result of a fire. The structure was a non-conforming use. In April 1994, after determining that the building had been damaged to an extent greater than fifty percent of its assessed valuation, New Brunswick's Administrative Officer invoked subsection 22–15.1(b)4 of the City's zoning ordinance which provided that "any non-conforming structure destroyed to an extent greater than fifty percent of its assessed valuation shall not be reconstructed." Accordingly, he denied plaintiff permission to reconstruct and ordered that the remainder of the structure be demolished.

█ It is clear from the terms of the insurance policy at issue that the carrier has undertaken, *inter alia*, to "[p]ay the value of lost or damaged property[,]" but is not responsible to "pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." Consequently, because the structure was razed rather than replaced either *in situ* or by other property, the trial court was in error to base its determination on replacement cost. *See Ruter v. Northwestern Fire and Marine Ins. Co.*, 72 *N.J.Super.* 467, 472, 178 *A.*2d 640 (App.Div.), *certif. denied*, 37 *N.J.* 229, 181 *A.*2d 12 (1962); *cf. Elberon Bathing Co. v. Ambassador Ins. Co.*, 77 *N.J.* 1, 7–9, 389 *A.*2d 439

(1978). *See generally* Randy R. Koenders, Annotation, *Construction and Effect of Property Insurance Provision Permitting Recovery of Replacement Cost of Property,* 1 *A.L.R.*5th 817, 848–54 (1992 & Supp.1996); Dag E. Ytreberg, Annotation, *Construction and Effect of Provision of Property Insurance Policy Permitting Recovery of Replacement Cost of Property, In Excess of Actual Cash Value,* 66 *A.L.R.*3d 885, 887–92 (1975).

■ The remaining substantive question is whether defendant is liable for the actual cash value of only the damaged portion of the premises or whether, by reason of the application of the municipal ordinance, plaintiff is entitled to recover for a "constructive total loss" of the entire building. We have been given no reason to depart from the "general rule" that governs such situations, as applied in *Feinbloom v. Camden Fire Ins. Ass'n,* 54 *N.J.Super.* 541, 149 *A.*2d 616 (App.Div.), *certif. denied,* 30 *N.J.* 154, 152 *A.*2d 172 (1959), widely considered to be a leading case in the field:

> [I]f "by reason of public regulations rebuilding is prohibited the loss is total, although some portion of the building remains which might otherwise have been available in rebuilding." 45 *C.J.S. Insurance* § 913, p. 1008; 6 *Appleman, Insurance Law and Practice,* § 3822, p. 166; 7 *Couch, Cyclopedia of Insurance Law,* § 1772, p. 6029; Annotation, *"Insurers liability as affected by refusal of public authorities to permit reconstruction or repair after fire,"* 49 *A.L.R.* 817 (1927); *Rutherford v. Royal Insurance Co.,* 12 *F.*2d 880, 49 *A.L.R.* 814 (4th Cir.1926). *Cf., City of New York Fire Ins. Co. v. Chapman,* 76 *F.*2d 76 (7th Cir.1935).
>
> [*Id.* at 544, 152 *A.*2d 172.]

We conclude, as we did in *Feinbloom,* that no language of the insurance policy at issue excludes liability for the constructive total loss which plaintiff experienced. *See generally* D.E. Evins, Annotation, *Insurer's Liability as Affected by Refusal of Public Authorities to Permit Reconstruction or Repair After Fire,* 90 *A.L.R.*2d 790 (1963).

■ To the extent standard fire insurance policy language in this regard was modified subsequent to our decision in *Feinbloom,* as defendant stresses, no contrary result is indicated. The stated exclusion in the policy at issue is:

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    **a. Ordinance or Law**

    The enforcement of any ordinance or law:

    (1) Regulating the construction, use or repair of any property; or

    (2) Requiring the tearing down of any property, including the cost of removing its debris.

The policy language with which we were confronted in *Feinbloom* provided:

> " \* \* \* this company \* \* \* does insure \* \* \* to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality ˋ \* \* \* without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair \* \* \*."

> [*Feinbloom, supra*, 54 *N.J.Super.* at 545, 149 *A.*2d 616 (emphasis omitted).]

and

> "This company shall not be liable for loss by fire \* \* \* caused, directly or indirectly, by \* \* \* order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire \* \* \*."

> [*Id.* at 546, 149 *A.*2d 616.]

Since *Feinbloom* was decided, the general rule described therein has been applied or cited with approval by most courts that have considered the question. *See, e.g., Dugan v. Metropolitan Property and Liab. Ins. Co.,* 853 *F.Supp.* 1103, 1105 (E.D.Ark. 1994); *Reliance Ins. Co. v. Orleans Parish Sch. Bd.,* 201 *F.Supp.* 78, 80–81 (E.D.La.1962), *aff'd in part, rev'd in part,* 322 *F.*2d 803 (5th Cir.1963); *Taylor v. Aetna Cas. and Sur. Co.,* 232 *Ark.* 981, 341 *S.W.*2d 770, 771–72 (1961); *Netherlands Ins. Co. v. Fowler,* 181 *So.*2d 692, 693 (Fla.Dist.Ct.App.1966); *Garnett v. Transamerica Ins. Serv.,* 118 *Idaho* 769, 800 *P.*2d 656, 666 (1990); *Hertog v. Milwaukee Mut. Ins. Co.,* 415 *N.W.*2d 370, 372 (Minn.Ct. App.1988); *Stahlberg v. Travelers Indem. Co.,* 568 *S.W.*2d 79, 84– 86 (Mo.Ct.App.1978); *Maryland Cas. Co. v. Frank,* 85 *Nev.* 209, 452 *P.*2d 919, 920 (1969); *Stevick v. Northwest G.F. Mut. Ins. Co.,* 281 *N.W.*2d 60, 62–64 (N.D.1979); *Glens Falls Ins. Co. v. Peters,* 379 *S.W.*2d 946, 947–48 (Tex.Civ.App.1964), *rev'd on other grounds,* 386 *S.W.*2d 529 (1965). *Cf. Algernon Blair Group, Inc.*

*v. United States Fidelity and Guar. Co.*, 821 *F.*2d 597, 602–03 (11th Cir.1987); *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 *P.*2d 1292, 1295 (Alaska 1994); *Starczewski v. Unigard Ins. Group*, 61 *Wash.App.* 267, 810 *P.*2d 58, 62, *review denied*, 117 *Wash.*2d 1017, 818 *P.*2d 1099 (1991); *Gimbels Midwest, Inc. v. Northwestern Nat'l Ins. Co.*, 72 *Wis.*2d 84, 240 *N.W.*2d 140, 147 (1976). *Contra Bischel v. Fire Ins. Exch.*, 1 *Cal.App.*4th 1168, 2 *Cal.Rptr.*2d 575, 581 (1991). Cases involving only a partial loss—with the amount of the cost of repair increased by reason of the requirements of law, ordinance or regulation—embody different considerations leading to different results. *See, e.g., Regency Baptist Temple v. Insurance Co. of N. Am.*, 352 *So.*2d 1242, 1243–44 (Fla.Dist.Ct. App.1977); *Cohen Furniture Co. v. St. Paul Ins. Co.*, 214 *Ill. App.*3d 408, 158 *Ill.Dec.* 38, 573 *N.E.*2d 851, 853 (1991); *Bradford v. Home Ins. Co.*, 384 *A.*2d 52, 54 (Me.1978); *Roberts v. Allied Group Ins. Co.*, 79 *Wash.App.* 323, 901 *P.*2d 317, 318–19 (1995).

Despite defendant's argument to the contrary, it is far from clear that modifications in standard policy language since *Feinbloom* betoken a design, apparent to the policyholder, to provide coverage for property losses that is more limited than we determined was required in *Feinbloom.*

> When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded "to the full extent that any fair interpretation will allow."

> [*Kievit v. Loyal Protective Life Ins. Co.*, 34 *N.J.* 475, 482, 170 *A.*2d 22 (1961) (quoting *Danek v. Hommer*, 28 *N.J.Super.* 68, 76, 100 *A.*2d 198 (App.Div.1953) *aff'd* 15 *N.J.* 573, 105 *A.*2d 677 (1954)).]

> The quest for the significance of language employed in an insurance contract is always engaged in with certain basic tenets in mind. Wherever possible the phraseology must be liberally construed in favor of the insured; if doubtful, · uncertain, or ambiguous, or reasonably susceptible of two interpretations, the construction conferring coverage is to be adopted. And exclusionary clauses of doubtful import are strictly construed against the insurer.

> [*Hunt v. Hospital Serv. Plan*, 33 *N.J.* 98, 102–03, 162 *A.*2d 561 (1960).]

*See also Ruter, supra,* 72 *N.J.Super.* at 471, 178 *A.*2d 640; *cf. Longobardi v. Chubb Ins. Co.,* 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990).

The exclusion with which we are confronted applies generally to losses resulting from governmental orders to destroy, as where a structure has become unsafe by reason of deterioration or other non-catastrophic causes. If, in the face of the general rule, defendant had sought to exclude responsibility for enhanced losses occasioned by a governmental requirement to raze the balance of property substantially destroyed by a catastrophic occurrence, it could have stated the exclusion with far greater clarity than it did in the policy at issue. We hold, therefore, in accordance with the general rule, that plaintiff was entitled to be compensated for a total loss of the property so destroyed. We remand for a determination of the actual cash value of the property as of the time of the fire, when the loss occurred.

We hold also that defendant is responsible for payment of interest on plaintiff's claim in accordance with the payment schedule provided in the policy, *i.e.,* from thirty days after plaintiff submitted her sworn proof of loss. Defendant has made no payment to plaintiff on account of the loss, not even an amount representing what defendant concedes was due and owing on the claim. The general rule in New Jersey is that, in the absence of special circumstances militating against such an award, prejudgment interest is payable for an insurer's failure to pay a claim for an insured fire loss. *Polito v. Continental Cas. Co.,* 689 *F.*2d 457, 461–62 (3rd Cir.1982). *See also* Kristine Cordier Karnezis, Annotation, *Insured's Right to Recover from Insurer Prejudgment Interest on Amount of Fire Loss,* 5 *A.L.R.*4th 126 (1981 & Supp.1996). Our contrary holding in *Feinbloom* was based in large part upon the novelty of the question presented, 54 *N.J.Super.* at 548, 149 *A.*2d 616, no longer a factor since that case was decided. To hold now that plaintiff was not entitled to prejudgment interest would be to reward an insurer for refusing to discharge its clearly established contractual responsibilities.

Whether plaintiff's contract claim is seen as liquidated or unliquidated, a factor of significance in *Feinbloom, see ibid.*, is of no consequence under currently prevailing principles. Where the equities are in the injured party's favor, prejudgment interest can be awarded irrespective of whether the claim is liquidated or unliquidated. *Swatek, Inc. v. North Star Graphics, Inc.*, 246 *N.J.Super.* 281, 286–88, 587 *A.*2d 629 (App.Div.1991) (citing *Ellmex Constr. Co. v. Republic Ins. Co.*, 202 *N.J.Super.* 195, 494 *A.*2d 339 (App.Div.1985), *certif. denied*, 103 *N.J.* 453, 511 *A.*2d 639 (1986)). *See also Performance Leasing Corp. v. Irwin Lincoln–Mercury*, 262 *N.J.Super.* 23, 29–30, 619 *A.*2d 1024 (App.Div.), *certif. denied*, 133 *N.J.* 443, 627 *A.*2d 1148 (1993).

Reversed and remanded.