BERING STRAIT SCHOOL DISTRICT, Appellant,

v.

RLI INSURANCE COMPANY and Lexington Insurance Company, Appellees.

No. S–5300.

Supreme Court of Alaska.

May 20, 1994.

Sara E. Heideman, Hedland, Fleischer, Friedman, Brennan & Cooke, Anchorage, for appellant.

I. Franklin Hunsaker, John W. Buehler, Randy L. Arthur, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, and Peter Maassen, Burr, Pease & Kurtz, Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

On October 17, 1989, the high school building in the village of Stebbins was destroyed by fire. The appellant, Bering Strait School District, owned the building and had secured fire insurance for it under two all risk policies, one issued by RLI Insurance Company, and the other issued by Lexington Insurance Company, the appellees in this case. The Stebbins high school building was originally constructed in 1979. By the time of the fire, building code requirements had changed to some extent. In order to rebuild the high school building in accordance with current building codes, an additional $206,466 had to be expended. The insurance companies refused to pay this sum, although they otherwise paid the replacement cost of the building, a sum of approximately $3,500,000. The issue presented in this case is whether payment of the code upgrade cost is also required.[1]

---

1. The code upgrades were of four types, architectural, structural, mechanical and electrical. The most expensive were the structural upgrades. The largest structural item required an increase in the number and size of certain beams and joists. This added a cost of approximately $29,000. Next largest was an increase in nailing patterns and connectors in order to take into account new wind load standards. This cost approximately $27,000. The most expensive architectural item was a guardrail costing approximately $4,000. The most expensive electrical upgrade was $5,500 for emergency lights. Mechanical additions were minor, totalling under $3,000.

The school district sued the insurance companies for code upgrade costs. The insurance companies answered and moved for judgment on the pleadings. The school district countered with a motion for summary judgment. After argument, the superior court granted the insurance companies' motion for judgment on the pleadings based solely on the civil authority exclusion of the policies. From this order the school district has appealed.

We now set forth the relevant provisions of the insurance contracts.

The insuring agreement in the RLI contract states that

> this Company ... does insure the insured named above and legal representatives, *to the extent of the [replacement cost] of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality* within a reasonable time after such loss, *without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair* ... against all [risks of physical loss or damage]....

(Emphasis added.) [2]

The civil authority clause, which is clause 7 of the all risk endorsement to both contracts, states as follows:

> The policy *does not insure against loss or increased cost occasioned by any Civil Authority's enforcement of any ordinance or law* regulating the reconstruction, repair, or demolition of any property insured hereunder.
> Notwithstanding the above and subject to the sum insured, ... property which is insured under this Policy is also covered against the risk of damage or destruction by civil authority during a conflagration and for the purpose of retarding the same provided that neither conflagration nor such damage or destruction is caused by or

contributed to by war, invasion, revolution, rebellion, insurrection, or other hostilities or warlike operations.

(Emphasis added.)

The replacement cost endorsement of both insurance contracts state in relevant part:

> 3. This Company shall not be liable under this endorsement *for any loss—*
>
> > A. *occasioned directly or indirectly by enforcement of any ordinance or law* regulating the use, construction, repair or demolition of property unless such liability has been specifically assumed under this policy;
> >
> > ....
>
> 6. This Company's *liability for loss* on a replacement cost basis *shall not exceed* the smallest of the following amounts:
>
> > ....
> >
> > B. *the replacement cost of the property* or any part thereof *identical with such property* on the same premises *and intended for the same occupancy and use* [.]

(Emphasis added.)

## DISCUSSION

■ The obligations of insurers are generally determined by the terms of their policies. "The intention of the parties as to the coverage of a policy is determined by the words which they have used." *State v. Underwriters at Lloyds, London,* 755 P.2d 396, 400 (Alaska 1988) (quoting 6B J. Appelman, *Insurance Law and Practice* § 4254, at 24–25 (Buckley ed. 1979)). However, there are a number of special rules of construction which also apply.

■ Insurance contracts are contracts of adhesion, and as such "will be construed according to the 'principle of reasonable expectations.' " *Id.* (quoting Appelman, § 4254 at 25). The reasonable expectations doctrine has been stated as follows:

---

2. The Lexington contract contains a similar like kind and quality clause:

> Unless otherwise provided in form attached, this Company shall not be liable beyond the [replacement value] of the property at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such [replacement value], however caused, and shall in no event exceed what it would then cost to repair or replace the same with material of like kind and quality.

The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

*Id.* (quoting Robert Keeton, *Basic Text on Insurance Law* § 6.3(a), at 351 (1971)). In order to determine the reasonable expectations of the parties,

we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

*Stordahl v. Government Employees Ins. Co.,* 564 P.2d 63, 66 (Alaska 1977) (footnote omitted).

██ Construction of an insurance policy under the principle of reasonable expectations does not depend on a prior determination of policy ambiguity. *Id.* However, where a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, the court accepts that interpretation which most favors the insured. *Starry v. Horace Mann Ins. Co.,* 649 P.2d 937, 939 (Alaska 1982). Grants of coverage should be construed broadly "while exclusions are interpreted narrowly against the insured." *Hahn v. Alaska Title Guaranty Co.,* 557 P.2d 143, 145 (Alaska 1976); *Starry* at 939.

██ The school district's general argument is that the insurance policies are replacement cost policies which were intended to cover the cost to reconstruct a building so that the new building would be able to replace in function the building which was destroyed. It argues, in other words, that it reasonably expected that if one of its school buildings were destroyed, its insurance would cover the cost to build a replacement building

which would be capable of functioning as a school. The school district also argues that none of the exclusionary clauses relied on by the insurance companies when properly construed in accordance with the rules of construction governing insurance policies applies to code upgrades.

The insurance companies rely on two types of provisions in the policies which they contend preclude coverage for the code upgrades: (1) the civil authority exclusion contained in clause 7 in the all risk endorsement and the similar exclusions contained in paragraph 3(A) of the replacement cost endorsement and in the insuring agreement; and (2) the "like kind and quality" provision contained in the insuring agreement and the similar "identical property" clause contained in paragraph 6(B) of the replacement cost endorsement. The superior court relied only on the civil authority exclusion in granting the insurance companies' motion. We address the like kind and quality clauses as well because this court "may uphold the lower court's ruling if there is any other ground apparent, from the record, which, as a matter of law would support the result reached by the trial court." *Municipality of Anchorage v. Higgins,* 754 P.2d 745, 748 (Alaska 1988) (citations omitted).

Having examined the policy as a whole and the relevant case law, it is our view that the school district's reasonable expectation claim is a strong one. Building owners buy replacement cost insurance so that if their buildings are destroyed they can be replaced and their uses restored without cost.[3] Our examination of the exclusions relied on by the insurance companies has persuaded us that they are ambiguous, that they can be reasonably construed not to preclude coverage, and that they fall well short of negating an insured's expectation of coverage.

---

**3.** The Court of Appeals of Washington has recently expressed a similar conclusion:

We hold, as a matter of law, that the average person would believe that "the amount necessary to repair or replace the damaged property" includes the amount necessary to comply with mandatory building codes enacted after the policy was issued. *See Odessa School Dist.*

*105 v. Insurance Co. of America* [57 Wash.App. 893], 791 P.2d 237[–239 (Wash.App.1990) ] ("A policy is to be given a fair, reasonable, and sensible construction that comports with how it would be viewed by an average purchaser of insurance."). *Starczewski v. Unigard Ins. Group,* 61 Wash.App. 267, 810 P.2d 58, 62 (1991).

■ The civil authority clause quoted above requires that increased cost in order to be excluded must be "occasioned" by civil authority enforcement of an ordinance. Similarly, the civil authority exclusion in paragraph 3(A) of the replacement cost endorsement requires that loss be "occasioned directly or indirectly by enforcement of any ordinance ... unless such liability has been specifically assumed under the policy." And the insuring agreement clause disallows increased costs "by reason of any ordinance...." The school district argues that these clauses may reasonably be construed to be inapplicable to this case as the building codes did not "occasion" or cause the increased costs, the fire did. In other words, the school district reads this group of exclusions to apply only when the loss is solely caused by enforcement of an ordinance, and not where a covered event such as a fire triggers enforcement.[4]

There are a number of cases decided in other jurisdictions which have accepted this rationale.[5] A recent example of such a case is *Garnett v. Transamerica Insurance Services*, 118 Idaho 769, 800 P.2d 656, 666 (1990). Construing a provision which excluded coverage for "loss occasioned directly or indirectly by enforcement of any ordinance or law regulating the use, construction, repair, or demolition of buildings or structures," the court stated:

As we read this provision, it does not limit [the insurance companies'] obligation for the cost of repair or replacement of the building when a loss has occurred that is covered by the policy, but merely states that if the loss itself is caused by an ordinance or law, there is no coverage. For instance, if some safety improvement of a building to which no other loss had occurred were required by an ordinance or law, [the insurance company] would not be liable. However, when the cost of repairing or replacing a building that had been damaged by fire is increased by the requirements of an ordinance or a law, [the insurance company] is not relieved of that cost.

*Id.*

Similarly, in *Farmers Union Mutual Insurance Co. v. Oakland*, 251 Mont. 352, 825 P.2d 554 (1992), the Supreme Court of Montana construed a civil authority exclusion like that found in paragraph 3(A) of the replacement cost endorsement in this case. The endorsement stated that coverage did not apply "to loss or damage caused by or resulting from: (1) [e]nforcement of any ordinance or law, either directly or indirectly, regulating the construction, repair or demolition of buildings or structures." *Id.* at 555. The building owner in that case had been required to remove and dispose of asbestos from the owner's fire damaged building. The court held that the above exclusion was

4. The insurance companies argue that this interpretation renders the exclusion meaningless, as exclusions are not necessary unless a covered loss occurs. However, as pointed out by Bering, the policies are all risk policies, and thus cover any event causing damage or loss unless specifically excluded. Thus, but for an exclusion, the policy would apply in situations where loss or damage is caused by enforcement of an ordinance. For example, a government order to demolish a dilapidated building, to remove asbestos from a building, or to clean up toxic waste could all conceivably cause loss or damage to the property, thus be covered by an all risk policy. These events, however, would be excluded under a civil authority exclusion.

5. There is also contrary authority. *See Bischel v. Fire Ins. Exch.*, 1 Cal.App.4th 1168, 2 Cal. Rptr.2d 575, 581 (1991) (rejecting insured's argument that the need to replace the property was a result of the damage, not the building code, where the insured alleged that "because of stan-

dards for ... construction imposed by the City, the portion ... which was damaged ... cannot be repaired without also bringing the entire [property] up to code"); *Cohen Furniture Co. v. St. Paul Ins. Co.*, 214 Ill.App.3d 408, 158 Ill.Dec. 38, 40–41, 573 N.E.2d 851, 853–54 (Ill.App.1991) (holding that civil authority clause excluded cost of fire suppression system required by ordinance; causation argument was not addressed and clause excluded losses caused by enforcement of an ordinance "regardless of any other cause or event that contributes concurrently or in any sequence to the loss"); *see also Regency Baptist Temple v. Insurance Co. of North America*, 352 So.2d 1242, 1243–44 (Fla.App.1977) (excluding liability for additional expenses incurred in bringing non-damaged portion of roof up to code); *Bradford v. Home Ins. Co.*, 384 A.2d 52, 54 (Me.1978) (holding that insurer was not liable for increased cost of rebuilding in compliance with code).

"clearly inapplicable" under its own terms. The court stated:

> The asbestos regulations, which are of course a valid exercise of the government's police power, did not "cause" or "result in" "loss or damage" to the insured property. It was the fire that caused the "loss or damage" to the insured property.

*Id.* at 556.

In *Starczewski v. Unigard Insurance Group,* 61 Wash.App. 267, 810 P.2d 58 (1991), the clause construed excluded coverage for losses "resulting directly or indirectly from . . . any ordinance or law regulating the use, construction, repair, or demolition of property." *Id.* at 62. The court suggested that this exclusion was inconsistent with the insurance company's promise to "repair or replace the damaged property" and further observed that it "would also be rendered ineffective by the 'efficient proximate cause' rule, since any additional repair costs due to code requirements resulted predominately from the fire, not from the enforcement of any ordinance or law." *Id.*

In *Daniels v. Aetna Life & Casualty Co.,* No. IP 81–1413–C, 1983 WL 13684, at *2 (S.D.Ind., June 29, 1983), the court construed a clause excluding "loss caused by: 1. enforcement of any ordinance or law regulating the use, construction, repair, or demolition of property, including debris removal expense." The claim involved was for extra costs caused by the ordinance-mandated disposal of PCB following a fire. The court concluded that the exclusion did not apply because the removal was not exclusively caused by enforcement of the law, but was caused by a concurrence of the fire and law enforcement:

> [T]his Court concludes that the extra costs associated with PCB disposal were not brought about only through the action of state officials and statutes. The fire, a peril insured against, brought about the need for debris removal, including the need for PCB disposal. Accordingly, the Court concludes that the exclusion quoted above does not apply and that the defendant must bear the cost of disposal of PCB-contaminated debris.

*Id.* at *3.

We are in general agreement with the foregoing authorities and thus conclude that the civil authority group of exclusions contained in the policies may reasonably be construed not to apply in the present case.[6]

■ Concerning the like kind and quality clause of the insuring agreement, the school district contends that this clause does not come into play until "a fundamental and quantum difference in the nature of the building is sought to be made or when a totally new component is sought to be added to the building which was not present in its predecessor." It argues that the code upgrades required in the present case did not result in a building of such a fundamentally different kind and quality that it falls beyond the like kind and quality limitation.

In our opinion, this argument has merit, especially when it is formulated in terms of the reasonable expectations of the insured. A reasonable insured would not expect to be denied coverage because a replacement building is not a clone of the building which was destroyed. In an important sense, replacement cost policies almost always provide the insured with a building different from that which was destroyed. The insured re-

---

6. Another case involving similar coverage and exclusion clauses found ambiguity based on the inconsistency between the coverage clause duty to repair and replace on the one hand, and the exclusions for increased cost and loss occasioned by building codes, on the other. The court resolved this ambiguity in favor of the insured, stating:

> [I]f it be assumed that the replacement cost endorsement is inconsistent with the insuring clause of the policies in question, thus creating an ambiguity, that ambiguity must be construed against those who prepared the documents, the defendants. The obvious result of

> any such construction is the inescapable conclusion that defendants, having contractually undertaken to insure plaintiff's structures as school facilities, facilities known to be subject to the Building Code, have also assumed liability for the costs of complying with that Code upon loss. Thus, defendants are liable, up to the limits of coverage, for the cost of plaintiff's necessary repairs, including any added costs in making those repairs occasioned by Code requirements.

*Unified School Dist. No. 285 v. St. Paul Fire & Marine Ins. Co.,* 6 Kan.App.2d 244, 627 P.2d 1147, 1153–54 (1981).

ceives a *new* building, which should invariably be of better quality and worth more than the building which is replaced.

Further, it is our opinion that paragraph 6(B) reasonably suggests that code changes necessary to render the new building capable of the same occupancy and use as the old one are covered. Under that clause, loss is not to exceed the replacement cost of a building which is both "identical" with the destroyed building *and* "intended for the same occupancy and use."

These conclusions are supported by *Tenley Enterprises v. Harbor Insurance Co.*, Civ. A. No. 86–1035, 1986 WL 11471 (E.D.Pa., Oct. 15, 1986). In that case, the district court construed an "identical property" clause similar to that in paragraph 6(B) of the replacement cost endorsement in this case in a way which is germane not only to that clause but to the like kind and quality clause as well. Discussing how the jury had been instructed, the court expressed the view that substantial similarity between the new and the old structures was enough to satisfy the clause:

> I instructed the jury that the policy endorsement covered not just an "identical" structure, but an identical structure "intended for the same occupancy and use," and that this entitled plaintiff to reimbursement for whatever changes from the original design were necessitated by interim changes in governmental regulations, even if that cost more than following the original design would have cost. Apart from the question of legally mandated enhancements, I instructed the jury that substantial equivalents, rather than literal identity, would suffice: that is, differences in design or materials which did not substantially increase the cost over what it would have cost to duplicate the original design should be disregarded.

*Id.* at *2. We agree that this reflects a sensible construction of the like kind and quality type of clauses in question in this case.

Accordingly, we conclude that the increased replacement costs caused by changed code requirements are covered by the appellees' policies. REVERSED and REMANDED for further proceedings.

BURKE, J., not participating.

COMPTON, Justice, dissenting.

As the result of a fire, the Stebbins High School building was destroyed. It was reconstructed. Bering Strait School District incurred increased construction costs which resulted from enforcement of current building codes regulating construction of the building. The increased construction costs are at issue.

Several clauses of the RLI/Lexington Insurance contracts bear on the parties' arguments and the court's analysis. The insuring clause of the RLI contract excludes from the cost to repair or replace property "allowance for any *increased cost* of repair or reconstruction by reason of any ordinance or law regulating construction or repair...." The Pollution, Contamination, Debris Removal Exclusion Endorsement, Asbestos Exclusion, excludes from coverage "Demolition *or increased cost* of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating [asbestos, dioxin, or polychlorinated biphenols]." (Emphasis added). The Debris Removal Exclusion excludes from coverage "loss or damage or expenses ... resulting from removal of debris of damaged property insured hereunder...." The All Risks of Physical Loss or Damage, Conditions, Civil Authority clause provides in part:

> The policy does not insure against loss *or increased cost* occasioned by any civil authority's enforcement of any ordinance or law regulating the reconstruction, repair, or demolition of any property insured hereunder.

(Emphasis added). The Replacement Cost Endorsement excludes from coverage "any loss (A) occasioned directly or indirectly by enforcement of any ordinance or law regulating the use, construction, repair or demolition of property...." The Lexington Insurance contract contains similar exclusions.

In the court's view "loss" subsumes "increased cost." Op. at 1295–1296 & n. 4.[1] I dissent because this result ignores the term "increased cost" and imposes liability on the insurers, notwithstanding the express language of the contracts.

Several of the cases relied on by the court do not address insurance contracts which exclude coverage for "increased costs" related to enforcement of an ordinance regulating construction. *See Garnett v. Transamerica Ins. Servs.,* 118 Idaho 769, 800 P.2d 656, 662 (1990); *Daniels v. Aetna Life & Casualty Co.,* 1983 WL 13684, at *4 (S.D.Ind. June 29, 1983); *Starczewski v. Unigard Ins. Group,* 61 Wash.App. 267, 810 P.2d 58, 62 (1991). In those cases the contracts limit liability only to an undefined "loss." Thus it is left to the courts to construe what constitutes a "loss." Courts are free to construe the term as broadly as they choose, applying traditional rules of construction of ambiguous insurance contract terms. This is appropriate, because construction of the term "loss" is subject to the adhesion rationale advanced by this court. However, the rationale is misapplied in this case. The adhesion rationale does not justify reading a provision out of a contract.

The adhesion rationale is also appropriate where contract terms lead to reasonable expectations on the part of the insured. *See* Op. at 1294, 1295 & 1296. It is well established that when a court construes an insurance contract, it must consider the contract in its entirety. *U.S. Fire Ins. Co. v. Colver,* 600 P.2d 1, 3 (Alaska 1979); *Rig Tenders,*

*Inc. v. Santa Fe Drilling Co.,* 585 P.2d 505, 509 (Alaska 1978); *Ness v. National Indem. Co.,* 247 F.Supp. 944, 948 (D.Alaska 1965). So must it be in determining objectively reasonable expectations. I suggest that in this case a person reading the civil authority clause, in conjunction with other provisions of the insurance contracts, could *not* reasonably expect coverage for increased costs mandated by enforcement of current building codes, regardless of why enforcement was mandated. An insured loss followed by replacement of the property "without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair," read in conjunction with exclusion of insurance "against loss or increased cost occasioned by any Civil Authority's enforcement of any ordinance or law regulating the reconstruction, repair, or demolition of any property insured" and related provisions, brook of no objectively reasonable expectation of coverage.

Some courts have imposed liability for increased costs necessitated by enforcement of ordinance or law notwithstanding the existence of increased cost clauses identical to those in this case. *See Unified School District v. St. Paul Fire & Marine,* 6 Kan. App.2d 244, 627 P.2d 1147 (1981); *Farmers Union Mutual Insurance Co. v. Oakland,* 251 Mont. 352, 825 P.2d 554 (1992). However, these cases are distinguishable, because the increased cost clause was not outcome-determinative in either case.[2]

---

**1.** Note 4 presents several examples of hypothetical applications of the "civil authority" clause Bering Strait claims give it meaning. The asbestos and toxic waste examples are inapposite, as both are addressed in the Pollution, Contamination, Debris Removal Exclusion Endorsement. The demolition example does not withstand scrutiny. If demolition of a dilapidated building through enforcement of a building code is not an insured loss, what conceivably could be an insured "increased cost" of reconstruction of the uninsured loss? "Increased cost" necessarily means that the initial cost is the result of an insured event, and only the increased cost of compliance with current regulatory requirements relating to "reconstruction, repair, or demolition" is excluded.

**2.** Other authorities have reached different results. One commentator has noted that courts addressing situations like the present case have

held that "under the policy the insurance company undertook to cover the loss resulting from the fire combined with the building regulations." Nonetheless, "[e]xpress policy language excluding liability for the increased cost of construction or repair as a result of building regulation requirements has been given effect." George J. Couch, *Couch Cyclopedia of Insurance Law* § 54:166, at 551–53 (2d rev. ed. 1983). Several jurisdictions have adopted this reasoning. *See, e.g., Breshears v. Indiana Lumbermens Mut. Ins. Co.,* 256 Cal.App.2d 245, 63 Cal.Rptr. 879, 884–85 (1967); *Regency Baptist Temple v. Ins. Co. of N. Am.,* 352 So.2d 1242, 1243–44 (Fla.Dist.Ct. App.1977); *Cohen Furniture Co. v. St. Paul Ins. Co.,* 214 Ill.App.3d 408, 158 Ill.Dec. 38, 573 N.E.2d 851, 854 (1991); *Hewins v. London Assurance Corp.,* 184 Mass. 177, 68 N.E. 62, 64 (1903).

For example, in *Hewins* the Supreme Judicial Court of Massachusetts considered a provision

*Unified School District* is distinguishable for several reasons. The actual cash value provision and the replacement cost endorsement are virtually identical to the RLI/Lexington Insurance provisions, including a replacement cost endorsement clause which excludes a loss unless "specifically assumed under this policy." The trial court held that since the insurer had insured a school building, it had insured the school building's functional use. The school building was subject to the state building code. Having insured the functional use of a building subject to the state building code, the insurer had contractually specifically assumed building code costs. Additionally, the trial court held that the suggested limitation was void as against public policy, as it was in conflict with state statutory requirements. *Unified Sch. Dist.,* 627 P.2d at 1153. Lastly, on appeal counsel for the insurer "tacitly conceded" at oral argument that (a) "defendants insured the *functional* use of the buildings in question as school facilities, which are, by definition, subject to Building Code cost liability, and thus, contractually assumed Building Code cost liability," and (b) limitations on code cost liability "are void and unenforceable as against public policy [i.e., statutory requirements]." *Id.* at 1153. In the case before us the trial court did not base its decision on any claimed ambiguity or lack of ambiguity between the actual cash value provision and the replacement cost endorsement. It cited no statute with which the increased cost exclusion is arguably in conflict. There have been no such concessions on appeal.

*Farmers Union* is also distinguishable. The court considered a civil authority clause and an increased cost clause, both of which were identical to those in this case. However, the case concerned code-necessitated asbestos removal. The court imposed liability notwithstanding the exclusion for increased costs because "[t]he clause as a whole refers to types of *new* materials with which the damaged materials must be repaired or replaced. It is utterly silent on the question of debris removal." *Farmers Union,* 825 P.2d at 556. Indeed, *Farmers Union* supports a dichotomy between "loss" on the one hand and "increased cost" on the other.[3]

I am unpersuaded by the court's analysis. If the insurance contracts referred only to "loss," the court might be justified in construing "loss" broadly to include the increased costs resulting from enforcement of building codes in existence at the time of reconstruction.[4] However, the contracts exclude both "loss" *or* "increased cost." These are distinct exclusions. They are not redundant on their face. They apply to "reconstruction, repair, or demolition of any property insured hereunder" following loss from an insured event.

The court also addresses the insurers' alternative ground for affirmance under the "like kind and quality" clause. *See* Op. at 1295, 1297–1298. I do not believe it necessary to address this ground for affirmance,

under which "the insurer shall not be liable 'beyond the actual value destroyed by fire for loss occasioned by ordinance or law regulating construction or repair of buildings.'" *Hewins,* 68 N.E. at 64. Accordingly, the court concluded that

> such portion of the damage caused by the change in the condition of the building laws, whether regarded as a condition or a cause, *is not to be considered as a loss or damage by fire,* but is to be excluded from consideration, and the loss is to be estimated as if there were no building laws affecting the situation.

*Id.* (emphasis added).

**3.** If the *Farmers Union* court was presented with this case, arguably it would have excluded coverage because the code cost increases did not refer to debris removal, but related to the costs of replacement and repair of the burned school

building, costs which were excluded from coverage.

**4.** The court flirts with Bering Strait's argument that the fire, not the building codes, "occasioned" the increased cost of reconstruction of the school building. Op. at 1295–1296. This interpretation, Bering Strait argues, renders the provision ambiguous. This argument is of the "For lack of a nail" variety. "Occasion" is defined as "[s]omething that brings on an action or event." *Webster's II New Riverside University Dictionary* 812 (1988); "1. to give occasion to: bring about: give rise to: cause 2. to cause to do something." *Webster's Third New international Dictionary* 1560 (1969). An accurate statement of the situation in the case before us is that although the fire occasioned the loss of the school building, government regulation of reconstruction of buildings through the building codes occasioned the increased costs which are at issue. *See supra* note 2.

since I conclude that the "increased cost" exclusion is determinative. I would observe that RLI/Lexington do not argue that the replacement building must be a clone of the building which was destroyed. Further, the statement that the "insured receives a *new* building, which should invariably be of better quality and worth more than the building which it replaced" is not supported by any evidence in the record, and is, in my view, open to dispute.

I would affirm the judgment of the superior court.