James and Jane WEST, Appellants,

v.

UMIALIK INSURANCE COMPANY,
Appellee.

No. S–9070.

Supreme Court of Alaska.

Sept. 29, 2000.

Thomas R. Manniello, Borgeson & Burns, PC, Fairbanks, for Appellants.

Michael A. Budzinski, Alex K.M. Vasauskas, Stone, Jenicek & Budzinski, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

### I. INTRODUCTION

This case involves coverage under a homeowners insurance policy for damage caused by the settling of a house when soil under the foundation was washed away by water from broken plumbing. The superior court entered summary judgment in favor of the insurer, applying policy exclusions for loss caused by settling, earth movement, and water damage. Because the listed exclusions only apply to external or natural phenomena such that the damage does not fall within the exclusions, we reverse and direct the superior court to enter summary judgment in favor of the homeowners.

### II. FACTS AND PROCEEDINGS

This case concerns a dispute whether damage to the Fairbanks house owned by James and Jane West is covered under the their homeowners insurance policy. The facts are uncontested and set out in the parties' Stipulation of Facts. The Wests' house was insured under a homeowners insurance policy issued by Umialik Insurance Company. The water source for the house is a well. The pump for the well is located next to the house in an insulated chamber buried four or five feet below ground. The chamber is connected to the house's basement by a water pipe which runs through an insulated causeway. Ordinarily, heat from the basement also heats the causeway and prevents the system from freezing.

In late 1995 or early 1996 the temperature in the basement dropped below freezing, causing the pipe to break at the well pump and allowing water to gush out of the pump into the ground. The water infused the ground beneath the house's foundations. The Wests repaired the pipe. At the time, the house did not appear damaged.

But the northeast corner of the house later settled about three feet as a result of the leak. The parties agree that "[t]he water from the frozen broken water line had seeped under the house and undermined the dwelling's foundation, causing the settling of the house." Although the house was not breaking apart or collapsing, the house was racking, i.e., twisting, which caused sheetrock cracks, gaps in the ceiling and floor, uneven flooring, and doors that were out of plumb. In order to correct the problem, "a new basement foundation system would have to be built and the upper structure moved onto it" or "a two-story house above ground could be built on a different type of foundation to provide equivalent living space."

The relevant provisions of the Wests' homeowners insurance policy are set forth in the margin.[1] The policy is an "all risks"

---

1. The Insurance Policy provides in relevant part, as follows:

SECTION I PERILS INSURED AGAINST
COVERAGE A—DWELLING and COVERAGE
B—OTHER STRUCTURES
We insure against risk of direct loss to property.... We do not insure, however, for loss
....
2. Caused by:

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed....
....
e. Any of the following:

policy. In contrast to a "specific designation of risks" policy, which provides coverage only for enumerated perils, an "all risks" policy provides coverage for all perils not specifically excluded by the policy language.[2]

The Wests reported this loss to Umialik, which denied coverage. In denying coverage, Umialik relied on the exclusion for settling contained in paragraph 2.e(6) of the Perils Insured Against clause. Umialik also relied on paragraphs 1(b) and (c) of the Exclusions clause, which exclude earth movement and water damage "regardless of any other cause or event contributing concurrently or in any sequence to the loss."

The policy also specifically excludes coverage for freezing or the discharge from plumbing which has burst because of freezing. But because this exclusion does not apply when the home is occupied, the parties agree that this exclusion does not apply.

On December 5, 1997, the Wests filed this action in superior court, seeking damages and a declaration that the damage was covered under the policy. The parties stipulated as to the facts and filed cross-motions for summary judgment. The court conclud-

ed that Umialik had properly denied the claim and entered summary judgment in favor of Umialik. The Wests appeal.

## III. *STANDARD OF REVIEW*

■ This court reviews an order of summary judgment de novo.[3] Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... any party is entitled to judgment as a matter of law."[4] Normally, we will construe all facts in favor of the non-moving party.[5] Here, the parties agree on the material facts, and each seeks judgment as a matter of law. Therefore, we need only determine which party is entitled to judgment as a matter of law. In reviewing questions of law, this court exercises its independent judgment and adopts the rule of law that is most persuasive in light of precedent, reason, and policy.[6]

## IV. *DISCUSSION*

Umialik denied the Wests coverage under exclusions for settling, earth movement, and water damage. The Wests contend that they

---

(1) Wear and tear, marring, deterioration;
(2) Inherent vice, latent defect, mechanical breakdown;
(3) Smog, rust or other corrosion, mold, wet or dry rot;
(4) Smoke from agricultural smudging or industrial operations;
(5) Discharge, dispersal, seepage, migration, release or escape of pollutants....
(6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;
(7) Birds, vermin, rodents, or insects; or
(8) Animals owned or kept by an "insured."
If any of these cause water damage not otherwise excluded ... we cover loss caused by the water....
....

SECTION I EXCLUSIONS
1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
....
b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting....
....

c. Water Damage, meaning:
(1) Flood, surface water, waves, tidal water overflow of a body of water, or spray from any of these, whether or not driven by wind;
(2) Water which backs up through sewers or drains or which overflows from a sump; or
(3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

**2.** *See* Kenneth H. York et al., *Cases, Materials and Problems on General Practice Insurance Law* 229–30 (3d ed.1994).

**3.** *See Department of Health & Soc. Servs. v. Alaska State Hosp. & Nursing Home Ass'n*, 856 P.2d 755, 759–60 (Alaska 1993).

**4.** Alaska R. Civ. P. 56(c).

**5.** *See State v. Alaska Civil Liberties Union*, 978 P.2d 597, 603 (Alaska 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1156, 145 L.Ed.2d 1069 (2000).

**6.** *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

reasonably expected the policy to cover this loss.

### A. The Doctrine of Reasonable Expectations

██ Alaska has adopted the doctrine of reasonable expectations. We have held that "[t]he obligations of insurers are generally determined by the terms of their policies."[7] But because insurance policies are contracts of adhesion, they are construed according to the principle of "reasonable expectations."[8] Under the reasonable expectations doctrine, "[t]he objectively reasonable expectations of applicants ... regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."[9]

██ It is a settled principle that ambiguities in an insurance policy are construed in favor of the insured.[10] The court need not find the policy ambiguous, however, to construe it under the reasonable expectations doctrine.[11] To determine the parties' reasonable expectations, the court examines (1) the language of the disputed policy provisions; (2) the language of other provisions in the same policy; (3) extrinsic evidence; and (4) case law interpreting similar provisions.[12]

### B. The Exclusion for Settling Does Not Apply.

██ Umialik denied coverage to the Wests under the exclusion for loss caused by settling. The Wests argue that a reasonable person could understand "settling" to refer exclusively to settling caused by natural phenomena. Umialik contends the term plainly excludes a sinking of the land by any means. The term is not defined in the policy. We agree with the Wests that the settling exclusion does not preclude coverage for their loss.

### 1. The language of the disputed policy provision

██ The reasonable expectations doctrine directs the court to look first at the language of the disputed policy provision. The policy does not insure "for loss ... [c]aused by ... [s]ettling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings." The parties agree that, descriptively speaking, the house "settled." As both the superior court and Umialik note, the Stipulation of Facts provides that, because of the water, "the home had settled about three feet." However, this is not dispositive. That the Wests describe the loss in terms of "settling" does not mean that settling was the *cause* of the damage.[13]

### 2. Other policy provisions

██ To determine the insureds' reasonable expectations, we also look to other provisions of the policy. Paragraph 2.e of the Umialik policy lists eight separate exclusions including the settling exclusion and an exclusion for "wear and tear, marring, deterioration." In *Winters v. Charter Oak Fire Insurance Co.*,[14] the court ruled that "settling" is akin to normal wear and tear where the policy lists "settling" under a general heading of "wear and tear." Umialik distinguishes the case, arguing that the present policy is different because it separates "wear and tear" (paragraph 2.e(1)) from "settling" (paragraph 2.e(6)). This distinction is unpersuasive. The policy groups both "wear and tear," "settling," and six other clauses into

---

7. *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1294 (Alaska 1994).

8. *See id.; State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988).

9. *Underwriters at Lloyds*, 755 P.2d at 400 (quoting Robert E. Keeton, *Basic Text on Insurance Law* § 6.3(a), at 351 (1971)).

10. *See, e.g., Grace v. Insurance Co. of N. Am.*, 944 P.2d 460, 467 n. 15 (Alaska 1997); *U.S. Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979).

11. *See Bering Strait*, 873 P.2d at 1295.

12. *See id.*

13. *Cf. Souza v. Corvick*, 441 F.2d 1013, 1020–21 (D.C.Cir.1970) (holding that damage to realty was not excluded from coverage if such damage resulted from subsidence caused by something other than soil condition despite homeowners' expert's description of the damage as "settling").

14. 4 F.Supp.2d 1288, 1296 (D.N.M.1998).

paragraph 2.e, indicating that the eight clauses are somehow related, while paragraphs 2.a though 2.d list four unrelated provisions for denying coverage.

Indeed, *Winters* supports the view that grouping these clauses together leads a reasonable insured to infer a relationship. *Winters* cites with approval *Holy Angels Academy v. Hartford Insurance Group* for the proposition that

> it is not unreasonable for an ordinary individual ... to conclude that the policy language "settling, cracking" contained in a paragraph beginning, "Loss caused by: wear and tear ..." was limited in meaning to the gradual sinking of a building from the yielding of the ground under its foundation or by the natural constriction and expansion of its construction materials.[15]

In *Holy Angels Academy*, the Hartford policy was almost identical to the Umialik policy. Like the Umialik policy, the Hartford policy grouped a number of seemingly related exclusions, separated by semicolons, into one paragraph.[16] All the policy exclusions in this paragraph entail natural or environmental concerns. The Umialik policy only differs in that each semicoloned exclusion is preceded by a number (one through eight). Therefore, as in *Holy Angels Academy*, it would be reasonable for the Wests to understand settling, when included in a paragraph that begins with "wear and tear," as "the gradual sinking of a building from the yielding of the ground under its foundation or by the natural constriction and expansion of its construction materials."[17]

One additional policy provision is relevant to the Wests' claim. Under paragraph 2.a, the policy excludes coverage for loss caused by plumbing which has frozen and burst *if the home is unoccupied* (subject to exceptions not relevant here). The parties agree that this exclusion does not apply because the home was occupied. But in light of this exclusion, damage caused by burst pipes because of freezing is more than just one of numerous perils covered under the all-risks policy. Rather, a reasonable individual would understand that losses so caused are covered except where the house is not occupied. In other words, regardless of the settling exclusion, the policy implies coverage for the damage caused by water discharged from pipes which are ruptured by freezing.

### 3. *Extrinsic evidence*

The parties do not point to any extrinsic evidence, such as representations made to the homeowners. Therefore, we disregard this element of the reasonable expectations test.

### 4. *Case law examining similar provisions*

Finally, we look to case law examining similar provisions. Although this court has not had occasion to interpret the word "settling," various other jurisdictions have explained its meaning. *Souza v. Corvick*[18] and *Winters v. Charter Oak Fire Insurance Co.*[19] are the most persuasive in this regard.

*Souza* stands for the proposition that settling involves the condition of the ground.[20] After the insured presented evidence that

---

**15.** *Id.* at 1295 (citing with approval *Holy Angels Academy v. Hartford Ins. Group*, 127 Misc.2d 1024, 487 N.Y.S.2d 1005, 1007 (N.Y.Sup.1985) (alterations in original)).

**16.** The Umialik policy is set out in note 1, *supra.* Compare SECTION I—PERILS INSURED AGAINST, paragraph 2(e)(1)—(6) with the Hartford policy, which provides in relevant part as follows:

> This policy does not insure under this form against ...
> E.  Loss caused by:
> 1.  *Wear and tear, deterioration, rust or corrosion, mold, wet or dry rot;* inherent or latent defect; smog, vapor or gas from agricultural or industrial operations; mechanical breakdown, including rupture or

bursting caused by centrifugal force; *settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs and ceilings;* animals, birds, vermin, termites or other insects; unless loss by a peril not otherwise excluded ensues and then the Company shall be liable for only such ensuing loss.

487  N.Y.S.2d at 1006 (emphasis added).

**17.** *Holy Angels Academy*, 487 N.Y.S.2d at 1007.

**18.** 441 F.2d 1013 (D.C.Cir.1970).

**19.** 4 F.Supp.2d 1288 (D.N.M.1998).

**20.** 441 F.2d at 1021.

her house had settled due to explosions, the trial court in *Souza* granted the insurer a directed verdict, based on the policy exclusion for settling.[21] The appellate court reversed, finding that " 'settling' should be interpreted to mean the gradual subsidence of a structure resulting from the condition of the ground." [22] The court concluded, "since it certainly can be inferred that the subsidence involved here resulted from something other than the condition of the ground, we cannot say as a matter of law that the damage to [the insured's property] was excluded from the coverage of her policy." [23]

The facts of *Winters* are even more akin to the case at hand. In *Winters*, the parties stipulated that "a water line broke in plaintiffs' clubhouse which caused soaking and subsequent shifting of the soil beneath the building, leading to structural damage." [24] The court denied the insurer's motion for summary judgment based on an exclusion for "settling," holding that the term "has generally been taken to mean a gradual, natural process that every building endures. When the settling occurs from an accidental cause and happens abruptly and unexpectedly, that is not the sort of 'settling' to which the policy language refers." [25]

Other authorities that have addressed the issue concur. One commentator defines "settling" or "subsidence" in a policy exclusion to occur "when the soil compacts downward vertically over time." [26] The Ninth Circuit, applying California law, has characterized the conclusion slightly differently, focusing on the unanticipated versus the inevitable:

[A]n all physical loss home policy excluding coverage for damage sustained as a result of 'settling,' would not cover damage sustained due to a house settling into the soil thereunder *unless the immediate cause of the settling is an unanticipated event or casualty rather than an inevitable occurrence.*[27]

Similarly, in *Hartford Accident & Indemnity Co. v. Phelps*, the home suffered damage from a leaking underground pipe.[28] When the water was "pumped from beneath the house in repairing it, the house settled causing additional damage." [29] The Florida District Court of Appeal was of the "view that the exception as to settling, cracking, etc., is not applicable to the factual situation in this case." [30] Elsewhere, a New York trial court, contrasting settling with collapse, held that, "[a]s applied to houses, settling has a ... connotation ... of a building initially coming to rest after construction." [31] All of these definitions indicate that "settling" does not preclude coverage where water from a frozen pipe seeps under the house.

For its broad interpretation of the term "settling," Umialik relies on this court's interpretation of the term "earth movement" in *State Farm Fire & Casualty Co. v. Bongen*, which rejected the "man-made" versus "natural" dichotomy.[32] *Bongen*, however, has no applicability to the settling language in the present policy. In *Bongen*, the earth movement exclusion was preceded by a lead-in clause precluding coverage for earth movement loss "regardless of the cause." [33] Furthermore, the lead-in clause specifically excluded earth movement caused by both

21. *Id.*

22. *Id.*

23. *Id.* at 1022.

24. 4 F.Supp.2d at 1290.

25. *Id.* at 1295.

26. 11 *Couch on Insurance* § 153:79 (3d ed.1998).

27. *New Zealand Ins. Co. v. Lenoff*, 315 F.2d 95, 96 (9th Cir.1963) (emphasis added) (citing *Sabella v. Wisler*, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963)). The disputed New Zealand policy provision was similar to the Hartford provision set forth in note 16, *supra*. *See id.* at 95 n. 1.

28. 294 So.2d 362, 363 (Fla.App.1974).

29. *Id.*

30. *Id.* at 364.

31. *Barash v. Insurance Co. of N. Am.*, 114 Misc.2d 325, 451 N.Y.S.2d 603, 605 (N.Y.Sup. 1982).

32. 925 P.2d 1042, 1045–47 (Alaska 1996).

33. *Id.* at 1045–46.

"natural" and "external" forces.[34] Indeed, *Bongen* acknowledges that, "[u]ntil insurance companies added the lead-in clause, courts often limited the earth movement exclusion to natural disasters."[35] Therefore, since the settling exclusion in the Umialik policy is not preceded by a similar lead-in clause, *Bongen* does not support Umialik's position.

### C. The Exclusions for Earth Movement and Water Damage Do Not Apply.

■ Umialik also denied coverage on the basis of the exclusions for earth movement and water damage.[36] Again, the Wests contend that, under the doctrine of reasonable expectations, a reasonable insured could understand these provisions to exclude only loss caused by natural phenomena. The superior court rejected the distinction between natural and man-made phenomenon and applied the exclusions to preclude coverage. For the reasons described below, we hold that they do not apply.

### 1. The language of the disputed policy provision

■ The Wests contend that the policy language limits both exclusions to natural occurrences. Pursuant to the doctrine of *ejusdem generis*, a general term, when followed by specific terms, will be interpreted in light of the characteristics of the specific terms, absent clear indication to the contrary.[37] The Wests argue that the doctrine applies to both "earth movement" and "water damage." Both of these general terms are defined by specific terms that are naturally occurring in character. It follows, they argue, that both general terms should be limited to similar natural occurrences.

Umialik responds that the specific terms following earth movement include man-made occurrences. The exclusion specifically refers to earthquake, landslide, mine subsi-

dence, mudflow, and earth sinking, rising or shifting. Umialik argues that mudflows, landslides, and mudslides can be man-made, citing *Bongen* as an example. Umialik also adds that mine subsidence "further communicates that human processes or 'extrinsic' causes of earth movement were contemplated to be within the exclusion" since "[m]ines are man made, and ... the subsidence of earth over them therefore arises from human action."

Umialik's argument shows that the Wests have too narrowly characterized the qualities of the specific defining terms as "natural" occurrences. Instead, the terms might better be described as referring to natural or external occurrences. As in *Bongen*, mudslides can be natural or man-made, but they are caused by forces external to the insured property. Similarly, like other forms of earth movement and settling, landslides and mine subsidence result from conditions external to and apart from the insured's home. Exclusions for those events do not suggest that, where a leaking pipe on the premises washes away soil, the resulting damage will be excluded.

■ With respect to water damage, Umialik contends that *ejusdem generis* should not apply to the phrase "water below the surface of the ground" because the specific terms are preceded by the word "including" which, unlike the word "meaning," is expansive, not limiting. This argument is not convincing. A general term linked to specific terms with the word "including" may be interpreted under the *ejusdem generis* principle.[38]

The water damage exclusion describes water exerting pressure, seeping through, or leaking through the building, sidewalk, driveway, foundation, swimming pool, or other structure. An individual could reasonably interpret this as water from a natural or

---

34. *See id.* at 1047.

35. *Id.* at 1046.

36. *See supra*, note 1, under "EXCLUSIONS", paragraphs 1(b) & (c).

37. *See Bongen*, 925 P.2d at 1046.

38. *See, e.g., State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 419 n. 24 (Alaska 1982) (construing the word "disposition," which AS 34.55.044(1) defines as *including* the "sale, lease, assignment, award by lottery, or any other transaction concerning a subdivision," under the doctrine of *ejusdem generis* as limited to transactions involving the transfer of an interest in land).

external source seeping through the structure. The language does not describe the damage incurred by the Wests.

### 2. *Other policy provisions*

As discussed above, the policy provision excluding coverage for freezing pipes when the home is unoccupied sheds light on the Wests' reasonable expectations.

Several other provisions are also relevant. First, under the Perils Insured Against caption, paragraph 2, after listing several exclusions, provides, "If any of these [excluded forces] cause *water damage not otherwise excluded* ... we cover loss caused by the water...." (Emphasis added.) Although Umialik correctly points out that the language is an "exception to an exception" that "does not even come into play unless an exception initially applies," the provision is nonetheless revealing: by providing for "water damage not otherwise excluded," the policy necessarily connotes that *some* water damage is covered.

Also of relevance are other provisions excluding water damage. In addition to precluding coverage for "water below the surface of the ground," the water damage provision encompasses

> (1) Flood, surface water, waves, tidal water overflow of a body of water, or spray from any of these, whether or not driven by wind;
>
> (2) Water which backs up through sewers or drains or which overflows from a sump....

Both of these definitions also involve perils unlike damage from burst pipes of a home water system, for they ordinarily entail water from external sources. The contrast would reasonably tend to lead the Wests to believe that their loss would be covered.

Although the parties discuss the lead-in clause extensively, we find it to be irrelevant. Under this clause, loss caused by earth movement or water damage is excluded "regardless of any other cause or event contributing concurrently or in any sequence to the loss." But this lead-in clause is not significant unless the peril suffered by the Wests falls within the meaning of excluded earth movement or water damage in the first place.[39]

### 3. *Extrinsic evidence*

Again, the parties do not point to any relevant extrinsic evidence relating to the exclusions for earth movement and water damage.

### 4. *Case law interpreting similar provisions*

Umialik relies heavily on our decision in *State Farm Fire & Casualty Co. v. Bongen.*[40] In *Bongen,* the clear-cutting of a right-of-way for the installation of transmission lines caused mudslides, which damaged the plaintiffs' home.[41] This court relied on an exclusion for earth movement to deny coverage under the all risks homeowners insurance policy.[42] The court found that the earth movement provisions were not ambiguous and refused to limit this exclusion to strictly natural phenomena.[43]

But the peril suffered by the Wests is different. As discussed above, the water which damaged the Wests' home did not come from an external source, but from the insured improvements on the property.[44] Although the earth movement exclusion is not necessarily limited to strictly natural events, it does not include perils that originate from insured improvements.

Furthermore, the State Farm policy in *Bongen* specifically excluded earth movement "whether combined with water or not."[45] This provision is absent from the Umialik policy.

---

**39.** *See Winters v. Charter Oak Fire Ins. Co.,* 4 F.Supp.2d 1288, 1291–92 (D.N.M.1998).

**40.** 925 P.2d 1042 (Alaska 1996).

**41.** *Id.* at 1043.

**42.** *See id.* at 1044–47.

**43.** *See id.* at 1045–46.

**44.** *See* part IV.C.1, *supra.*

**45.** 925 P.2d at 1043.

We have reviewed other cases, including those cited by Umialik, that have interpreted an earth movement exclusion broadly to exclude perils similar to that suffered by the Wests.[46] But all of these cases involved a State Farm policy similar to that in *Bongen* explicitly excluding earth movement "whether combined with water or not."[47] Thus, these other courts relied on language missing from the present policy. Additionally, the interpretation of insurance contracts in Alaska differs from the interpretation of insurance contracts in those jurisdictions interpreting "earth movement" broadly: these courts require a finding of ambiguity before applying the doctrine of reasonable expectations.[48] We do not require such a finding.[49]

On the other hand, cases interpreting earth movement exclusions that do not contain the "whether combined with water or not" language have found coverage for damage caused by bursting pipes. At least two courts have distinguished the "whether combined with water or not" language.[50] Also these cases construe the earth movement exclusion to be limited to naturally occurring events.[51]

With respect to water damage, we note that numerous authorities discussing a water damage exclusion similar to the present one have limited the water damage exclusion to natural phenomena. *Couch on Insurance* notes that "[t]he exclusion of water below the surface has been held to apply only to natural flooding, as opposed to flooding by water emanating from artificial means."[52] For example, *Couch* finds "authority to the effect that the exclusion does not encompass loss from subsurface water present from a leak in the plumbing system."[53] New York cases interpreting similar water damage exclusions have distinguished between natural and non-natural forces.[54] In another case construing a similar exclusion, the court recognized that "the majority of the states ... construe the underground water exclusion as water of natural origin."[55] Umialik does not point to any cases excluding coverage for water damage that originated from the homeowners' property improvements.[56]

Therefore, we hold that the exclusions for earth movement and water damage do not preclude coverage in this case.

**46.** *See Schroeder v. State Farm Fire & Cas. Co.,* 770 F.Supp. 558, 560 (D.Nev.1991); *Millar v. State Farm Fire & Cas. Co.,* 167 Ariz. 93, 804 P.2d 822, 824–25 (App.1990); *Kula v. State Farm Fire & Cas. Co.,* 212 A.D.2d 16, 628 N.Y.S.2d 988, 991 (N.Y.App.Div.1995); *Village Inn Ap'ts. v. State Farm Fire & Cas. Co.,* 790 P.2d 581, 582–83 (Utah App.1990).

**47.** *See Schroeder,* 770 F.Supp. at 560; *Millar,* 804 P.2d at 824–25; *Kula,* 628 N.Y.S.2d at 989; *Village Inn,* 790 P.2d at 582.

**48.** *See Millar,* 804 P.2d at 824; *Schroeder,* 770 F.Supp. at 562; *Kula,* 628 N.Y.S.2d at 990; *Village Inn,* 790 P.2d at 582.

**49.** *See Bering Strait Sch. Dist. v. RLI Ins. Co.,* 873 P.2d 1292, 1295 (Alaska 1994) ("Construction of an insurance policy under the principle of reasonable expectations does not depend on a prior determination of policy ambiguity.").

**50.** *See Winters v. Charter Oak Fire Ins. Co.,* 4 F.Supp.2d 1288, 1292 (D.N.M.1998); *Sentinel Assocs. v. American Mfrs. Mut. Ins. Co.,* 804 F.Supp. 815, 819 (E.D.Va.1992) *aff'd,* 30 F.3d 130 (4th Cir.1994).

**51.** *See, Winters,* 4 F.Supp.2d at 1291 (construing the term "to cover only naturally occurring phenomena such as earthquake or landslide" where a broken pipe caused earth movement); *Sentinel*

*Assocs.,* 804 F.Supp. at 816, 818–19 (limiting an earth movement exclusion to natural phenomena and noting that "numerous courts faced with analogous language have reached similar conclusion").

**52.** 11 *Couch on Insurance* § 153:68 (3d ed.1998).

**53.** *Id.*

**54.** *See Ender v. National Fire Ins. Co. of Hartford,* 169 A.D.2d 420, 563 N.Y.S.2d 85 (N.Y.App.Div. 1991); *Popkin v. Security Mut. Ins. Co. of N.Y.,* 48 A.D.2d 46, 367 N.Y.S.2d 492 (N.Y.App.Div. 1975).

**55.** *Adrian Assocs., Gen. Contractors v. National Sur. Corp.,* 638 S.W.2d 138, 141 (Tex.App.1982), *aff'd, National Sur. Corp. v. Adrian Assocs., Gen. Contractors,* 650 S.W.2d 67 (Tex.1983).

**56.** Umialik does cite to one case excluding water damage, but in that case the water damage originated from an external source. *See Buttelworth v. Westfield Ins. Co.,* 41 Ohio App.3d 288, 535 N.E.2d 320, 321 (1987) (excluding coverage for water damage resulting from burst pipe on neighbor's property); *see also Rodin v. State Farm Fire & Cas. Co.,* 844 S.W.2d 537, 538 (Mo.App.1992) (excluding coverage for sewage back-up originating from roots in sewer system).

## V. *CONCLUSION*

Because the insurance policy exclusions relating to settling, earth movement, and water damage can reasonably be interpreted to be limited to naturally occurring phenomena or perils external to the insured property, we REVERSE the superior court's judgment and direct the superior court to enter summary judgment in favor of the Wests.